and be appellate by Joshua Vincent. Mr. Vincent? Before you get started, Mr. Vincent, did all of the attorneys hear our previous announcement about Judge Holder? Yes. Okay, Judge Holder is just sitting on this panel, but he's unavailable today. He had another very important commitment. He cannot be here. And he is going to listen to the tapes of the argument, will engage with us in discussions about the case, and will be a fully participating member. So with that in mind, Mr. Vincent. So it's not the same as the empty chair. It's not? I thought it was hilarious when the Albert Smith Award or charity event the other night reused that for part of his jokes. That was a better one-liners, I thought. May it please the court, counsel. My name is Josh Vincent. I represent the defendant, Dr. Jeffrey Traina. This is an appeal under Rule 306 from an order granting a new trial following a defense verdict in a medical malpractice case. We made a couple of different arguments in our brief, but I wanted to kind of just cut to the heart of the case. And I think that whenever we're looking at an order involving a grant of a new trial, I would say that virtually every case I've ever seen, I can't think of an exception. The court has been able to identify or pinpoint what difference it would have made if certain evidence were admitted or certain evidence were excluded. And that's what forms the basis of the grant of a new trial. That you can see that when the case is going to be sent down for the new trial, that something about it is going to be different in the way that it's tried. And the fundamental problem that I had with this transcript the first time I read it and filed a petition in this court was that I can't identify what the plaintiff would do differently, what additional evidence would the plaintiff put on with the benefit of a new trial in this case. The complaint here is that there was a tardy disclosure of a list of cases in which the defendant's expert had testified. It was disclosed, it had been asked for repeatedly, no question about it. There's no question about it that the plaintiff's attorney didn't get it until three days before trial. There's no dispute that he had it for about, in my recollection, about nine days before the witness testified. So there was tardy disclosure, no question about that. Would you say real tardy? Sure, I would agree. It's on the eve of trial. I mean, you know, I don't do just appeals. I've tried a few cases. There are things that happen on the eve of trial that you have to deal with as a trial attorney, you've got to roll with. That's why I prefer appeals. Fewer surprises. But he had it three days before trial, nine days before the witness testified. But the problem is there is no way to discern from this transcript what would have happened if he'd had it any sooner. You know, in cases where the evidence is withheld or not given to somebody on time or comes later, whatever, you make an offer of proof. It's excluded evidence. You make some showing of what you would do differently, how it affected the outcome. And the standard in every case where we're talking about the grant of a new trial because something went wrong during the original trial is you can say, I can identify what would have put the outcome, how it was affected, what was missing, what would be different on retrial that somebody would see and can identify. And Judge Corey was certainly considering that at a certain point. You know, when you read the transcript of the hearing on the post-trial motion, his question to counsel was, you know, it's been six months. He didn't say it's been six months, but six months had elapsed from the time of the verdict to the time of the hearing of the post-trial motion. And he said, you know, paraphrasing, did you find anything in that list of cases that you finally got? Something new or different information that would have helped you? And counsel's answer was no. Now, that seems to me that that was a significant amount of time that had elapsed. A significant opportunity to marshal whatever it is you could pinpoint in those transcripts and say, you know, here's further indications of where this defense expert contradicted himself on other aspects of ankle fusion surgeries. You know, if you could pinpoint some things like that that would have made a difference, then, you know, I would say the new trial order would probably be almost immune from attack. I mean, we do have the legal error that I think exists in this case, too. But I don't want to argue everything that's in the brief unless you have questions about that. To me, you know, sitting as a reviewing court, the fundamental question still boils down to, well, we've had a trial. The jury reached a verdict. If we send it back for a new trial, what's going to be different? And you just can't find that in this case. You can't. There is nothing that articulates or offers proof, nothing identified that tells you, gee, if I'd had this sooner, I could have done X instead. And that might have made – and you've still got to find out would that have made a difference in the outcome of the trial, but at least show me what X is that would have been different. And there's just no record of that in this case. You know, there is a heavy reliance both by the trial judge and counsel in the brief on Federal Rule of Civil Procedure 26. And that presumes prejudice, presumes prejudice when you don't produce a list of trials or testimony that the expert has given pretrial. It presumes prejudice, automatic sanction, the witness is barred. Well, that's quite different than a presumption that you're entitled to a new trial. I mean, even under the federal procedure, there is never a presumption of prejudice for purposes of a new trial. And that's not the law in Illinois. There is no presumption that simply because evidence was excluded or even withheld. So in the federal courts, is the expert excluded? Yes. Yeah. Under Rule 26, the expert would have been barred. Wouldn't be there. That's correct. So – This time it showed up. If that's – what's that? This time the expert showed up. That's correct. That's correct. But again, Illinois doesn't have a presumptive automatic barring of a witness when this occurs. Did the trial judge use a presumption or – I mean – I think he – I think the trial judge was acting under the federal rules. He cites a multitude of federal district court decisions involving Rule 26, pointing out – that that's why the federal rule has an automatic – you automatically bar the witness. And again, that's not the rule in Illinois. So he said essentially that it was persuasive, but it wasn't necessarily – Correct. That's true. But when you read his decision, I think trying to fairly interpret what he's saying, he's saying that, you know what, this is an egregious thing under the federal rules. It's presumptively prejudicial. There's a reason why it's handled this way in the federal court system. And I think this was bad. And he said, I think it's as if there was no production of this list at all. And therefore – and it gave the defense an unfair advantage and declares a new trial. I mean, you have to admit that it's sort of egregious when people don't respond to this. I was a trial judge for a number of years and tried a lot of malpractice cases. And there was a lot of back and forth during the trial over what had been discovered in, you know, in the discovery and disclosures and so forth. Right. And that's what mostly malpractice trials are, you know, especially in the last years I was trying them. And not to have these disclosures and having it at the last minute is really not a good thing. It's pretty bad. I don't disagree with you on that, Judge, but I do think – I mean, and it goes both ways. I mean, there are plaintiff experts and defense experts. No question about it. But I do think that it's fair to both sides that if that's the situation, you need to make a record of how you were prejudiced about it. There's just no – I mean, to make the leap now in a case like this, then you're sort of establishing a precedent in the sense that you're presumptively entitled to a new trial when this occurs. I mean, there's no doubt that the person didn't disclose this information. Well, he did disclose it. Until the last minute. That's correct. That's correct. I do want to, you know, make clear. I mean, and it was the stuff that was hard to find. Well, no, it certainly wasn't. Counsel had a fair amount of it already. I mean, that's kind of indicated by the record that he had transcripts from other trials. He – Counsel was the one who hired this expert initially. This was initially the plaintiff's expert. And it was only as a result of the stipulation that the parties entered into, at some point in the case, that it became the defense expert. So Counsel was obviously acquainted with this expert. He showed up at trial with transcripts. That's clear on the record. He had transcripts. And when you read the cross-examination of the expert, two-thirds of the cross-examination is entirely based on questions. It's totally questions about his testimony in other cases, how often for defense versus plaintiff, how much he makes, and contrary opinions. So he was well-armed. But, again, I come back to the point that, you know, you still don't have a rule in Illinois that presumes that this was harmful. I think it's fair to both sides that if this is going to happen, you have to make a showing of what you didn't get and how it affected your cross or how it affected your case. You've got to show how you would have used it, whether you're the plaintiff or the defendant. I mean, if I'm the defendant and the plaintiff has withheld the same kind of information, I don't think it's fair to be able to come in and say, well, he withheld it. I automatically get a new trial. It's presumptively prejudicial. No, I think you've got to come in and make some showing as to what you would have done with it, what it contained. I mean, for all we know, what's contained in the transcripts of the other trials that this guy testified in might not have even been admissible. I mean, we don't have any idea what the evidence would have been. And to me, that's the problem in this case. And we do have a further problem in the case. The other problem in the case is that the judge approached this from the standpoint of a discovery sanction, which you would analyze under Rule 219, and Rule 219 only permits discovery sanctions against the conduct of a party or someone acting at the insistence or collusion of a party. Well, Judge Coury made an express finding that there was absolutely no evidence of misconduct by the defendant or his attorneys in this case. It was the doctor that he was after. And as a result, he not only considered the doctor's conduct a third party, not a party as the rule requires. He considered the doctor's conduct in two other cases, not even this case. Now, you know, maybe that's some reason to haul this doctor in and hold him in contempt or something. But Rule 219 doesn't authorize a sanction against a party for the conduct of a non-party witness who's not acting, expressly found not to be acting in collusion or the insistence of a party, and especially not for conduct in which he engaged in two other cases that are totally unrelated to this one. Now, that to me is, that's a legal error. So even if you step out of just the question of does the record support an exercise of discretion here when there's no showing of the prejudice or how it would have affected the outcome of the case, what counsel would have done differently if he'd had a better or earlier disclosure. We're just guessing. And that's issue here, whether the trial judge abused the trial judge's discretion. Yes, that is true. And we give a lot of deference to the trial judges. Yes, you do. But I think that the record has to support, there's two answers to your question. One, the record has to support the exercise of discretion. The case law says you have to have demonstrable prejudice in a case, and that the record here does not support the prejudice because we don't know what difference it would have made. There's no offer of proof. There's nothing to show how it would have been used. That's number one. Number two, there is no use of it. What about the fact he got the information so late? Well, unless he can show. What prejudice are we talking about? Prejudice at trial, that's what we're talking about. Yes, exactly. He has to be able to show how earlier production would have changed his case at trial. That's what he has to show. If I had gotten it sooner, I mean, like I said, he had six months after the trial, could have gone through that list of cases, could have identified what other things he didn't have, could have made a showing in the post-trial motion at the hearing when the judge asked him, what did you find? Nothing. That's number one. Number two, an error of law is also an abuse of discretion. And since Rule 219 does not authorize a sanction against a party for a non-party witness' conduct, there's an error of law here, too. The judge's consideration of this— Whose expert was this? This was the defense expert. I'm not following your point. It was the defense expert. Yes. It was part of the defense case. Oh, I understand that. But the rule says that it has to be the conduct of a party or the assistance or collusion with a party, and the judge makes an express finding that the lawyers in the party had nothing to do with this. I mean, you know, I understand what you're saying. Yeah, you would think that somehow the defense lawyers were involved in this. Well, I'm not saying the defense lawyers were involved, no. But I'm saying, you know, you call a witness, you call your expert, you call your expert. That's true, but in this case, the judge, you know, it's unusual, but he makes an express finding on the record that the lawyers in the party had nothing to do with this. It's all the witness. I don't think it's fair to tag a party with a sanction based on the conduct of a non-party witness. Is there some kind of quasi-agency relationship between parties, attorneys, if you will, and an expert and their expert? I say quasi because I'm not sure where I'm going with that. Absent an attorney-client relationship, which is not existing there, no, I wouldn't say so. The, no, I can't, I can't, I can't see that there's... The agent would be the witness. The only... The principal would be the agent. Either the principal, I think the principal would probably be the party. I mean, the party is technically the one that hires or pays for the witness, not the lawyer. See, I'm trying to think of what is the kind of presidential rule that this court would be setting with regard to abuse of discretion if you're looking at, you know, sort of the severe burden on the other side. I mean, you know, trials today, especially with experts, are about full disclosure. That defeats the very purpose of our modern discovery with regard to expert witnesses, does it not? I don't think, I don't think you can presume that, because that's my point, is unless you can show me how earlier disclosure would have made a difference in this case, then it's harmless. Well, going all the way back to Wilson v. Clark and the adoption of the, at that point in time, the federal rule that we adopted way back in the 80s for expert witnesses, the whole idea was the thrust of examination was based on your cross-examination, and that was once the expert provided the opinion. And the whole thrust of experts in the state of Illinois, and also even with Daubert and the federal courts, is the idea about full disclosure and having everything done in discovery and given up so that people can do their job. I mean, there's case after case in Illinois talking about the right of cross-examination. Cross-examination is always based on the discovery that you get. I couldn't agree with you more, Judge, but that's why, for example, when you sanction a party for a 213 violation where something hasn't been disclosed, you can identify what it was that wasn't disclosed and how it affects the case. It has to affect the case. I mean, you just don't order a new trial unless you can show it would have affected the outcome. How important do you think this expert was? Oh, I'm sure he was, you know, well, some people say that the juries don't pay much attention to experts. Who's the only defense witness? I'm sorry? Who's the only defense expert? Oh, no. As counsel makes clear, the defendant doctor testifies as an expert on his own behalf as well. So he wasn't the only expert. Any other questions? Thank you, Mr. Benson. Mr. Melton. Good afternoon. May it please the Court. I'm Todd Melton. I represent Gina Kubitschek in this matter. Jennifer Kelly from my office is here with me today. Counsel, thank you for your argument. I want to make an important distinction here right off the bat. The counsel keeps referring to this as a Rule 219 sanction. Actually, the trial judge did not grant a new trial as a sanction for Dr. Holmes' misconduct. Rather, he made a finding, he made a specific finding that the plaintiff did not get a fair trial. That's the standard. So he granted a new trial because the plaintiff did not get a fair trial as a result of Dr. Holmes' misconduct. That's an important distinction. If you look at the last page of Judge Corey's order, which was not part of the record at the time that we briefed this, but was page A8 to the appendix of the appellant's brief and page 7 of the post-trial order, at that point, what the trial judge states, Judge Corey states, in any event, his failure to abide by the rules placed the plaintiff at an unfair disadvantage, which was not cured by the court's earlier attempted remedy. Likewise, at A6, page 5 of Judge Corey's order, he states, the failure of Dr. Holmes to disclose the list in a timely manner, despite repeated requests by plaintiff to do so, placed the plaintiff at an unfair disadvantage. The disclosure that was provided occurred at a time when the plaintiff had, as a practical matter, no time to utilize the information. The effect was if no disclosure was made at all. What the defendant is asking you to do today is to deprive Mrs. Kubitschek of her fair trial. There's a point made, but six months went by and there's no evidence of what the problem is. I mean, there's a conclusion about a fair trial, but what was missing? Right, and I certainly disagree with that. I mean, of course at a time when we had a verdict against us and we were asking for a new trial, we're not at that point going to chase down every plaintiff's attorney and every defense attorney and every case that Dr. Holmes has testified in and track down that evidence and read through it and go to the expense of that when we're in the process of trying to get our new trial. The very fact, as Mr. Benson has pointed out, that two-thirds of the cross was based on the witness's inconsistent prior statements in those cases which we had the ability to unearth on our own certainly underscores the point that this stuff is relevant and likely to be used by counsel present. Was there any information that was new that was presented in the post-trial motion that didn't occur at the trial that you didn't have to trial to show that prejudice? No, no, we did not unearth that. Our position was then and is now that there should be a sanction and that the witness should be barred. And that was the whole point. The whole point is we were looking for, we want a new trial and at the new trial this witness should be barred for his misconduct. But those are two separate things. The first one is, did the plaintiff get a fair trial? And the second one is, should there be a sanction, namely the barring of the witness? And our position was, look, he's violated in this case, and I want to touch on this just a second because you both touched on it in your questioning before, this idea of is the party responsible for their controlled expert witness? Rule 213 contemplates, in fact, it charges a party and his or her attorney with control over retained experts, hence the nomenclature, controlled expert witness. And that's why Rule 213 contemplates considerably more disclosure of a Rule 213F3 witness, a controlled expert witness, than a Rule 213F2 witness, which would be somebody who's a treating doctor. In this case, the controlled witness ignored multiple disclosure requests, ignored multiple 201K letters, ignored multiple deposition writers, ignored multiple court orders, and then misrepresented all of the above to the jury in an overt attempt to avoid a court-fashioned remedy. To the extent that a new trial was created, it was created because the trial judge who heard the evidence in the case, who heard the representations of defense counsel, and who sat through that testimony, surely recognized that by Dr. Holmes sitting on the stand and looking at me and saying, Mr. Maltin, I didn't know he wanted this evidence, that the impact on that to the jury made it look like I was a clown, that I was the one who had come unprepared, that I had not been seeking this stuff for months and months and months. The judge immediately recognized the prejudice of that, and he granted a new trial. So really the question now, and we've touched on this, but the new trials are governed by 212.02. Motions for sanctions are governed by Rule 219. The significance of the Boren case, which is cited, is that it acknowledges that the trial court may consider the impact of witness misconduct in assessing whether a trial was fair. And in this case, the judge determined that the trial was not fair, that the plaintiff was unfairly disadvantaged, and for that reason, he granted the new trial. One thing I want to set to rest real quick. There's been this repeated allegation, and I think maybe because appellate counsel and trial counsel are different, it may be misunderstood, there's been the suggestion that this was my expert witness first. Dr. Holmes was never my expert witness. Dr. Holmes was a consultant to me. That we consulted with him on the case, and I don't know if this is in the record or not, but his billing records showed that he billed our firm and Henshaw & Culbertson the same month. There was a motion to have him barred then on the basis that it appeared that he was playing both sides of the fence. When the judge took that under advisement, both parties thought it might be wise to craft some sort of an agreement to allow him to testify for the defendant in exchange for the fact that the fact that he had consulted with us would not be revealed into evidence. But he was a consultant to us. This is not a situation where we retained him and disclosed him as our expert, and then they took his deposition and chose to use him as their expert. That's just flat out not the situation. You know, the trial judge has not barred the trial ruling, the post-trial motion, did not bar the witness from testifying at the second trial. That's correct. And that's also an exercise of discretion, isn't it? I mean, we don't have a federal rule. Isn't that true? It is true that the judge has not barred the witness at the second trial. My concern here is that the plaintiff has now spent six years and nearly $100,000 trying to get to justice. If Dr. Holmes is not barred, then the entire burden of his misconduct falls upon the innocent party, or falls upon Gina Kubitschek. And the message is that it's better to cheat and get caught than not have tried to cheat at all. I mean, that's my concern here. My concern here is that the trial judge, in his order, has stated there is no lesser remedy than barring the witness that is appropriate. So, in light of that finding, if he is allowed to testify in the new trial, all that means is that my client's path to justice has been delayed by already two, probably three years by the time we get back to trial. The additional cost of additional discovery. And I don't understand why, if the controlled defense expert is guilty of misconduct, that Ms. Kubitschek, of all people, should bear the burden of that. What is the burden when you're going to have to retry it anyway? What's the burden if you're retrying it anyway? It's not like you're going to go without new discovery. Isn't that right? Well, actually, the case is set for trial in the spring right now. So, whether there would be additional discovery or not, who knows? Well, let's think it through. I mean, either you have this witness retestifying, and then you'd want to make sure you got all the information, or you've got some other witness for them. Yeah, that would be presuming that the court would determine that they get another witness. I mean, it strikes me that this court is being asked to determine whether the witness should be barred as a sanction for his misconduct. I mean, the trial judge granted a new trial and did not bar the witness. That is correct. That is correct. I mean, you think that they should have no witness? Well, they have Dr. Trena, Your Honor. The party? The defendant, who was disclosed on all of the exact same points in the Rule 213 disclosure as Dr. Holmes. I mean, you see the point of my questions about this. I do. I understand the point of your question, but the issue here becomes, if he's allowed to testify, then who has suffered as a result of us having to go through the entire first trial, which was the unfair trial? The question isn't, what's the cost of the second trial, the fair trial? The question is, what expense did we have to go through to get through the first trial, which was a sham because of Dr. Holmes? But that, whatever happens, that's a given. You want the new trial, don't you, Your Honor? Yes, we do, and we also want the witness bar. Thank you, counsel. Thank you. Thank you, Mr. Melton. Mr. Vinson? There's just a couple of points I wanted to just draw the Court's attention to. Justice Carter, you asked, you know, what had happened in those six months, what additional information did counsel get? He said nothing, but then, of course, in the very next breath, he pointed out that they were able to track down in just a couple of days a lot of the information, all the information that you saw him use in the cross-examination. So, you know, to say that he just didn't want to take the time post-trial to try and make a record, I mean, that's what we do as attorneys. You know, when you feel you've been prejudiced by something, you make a record. And so he didn't make a record. It only took a few days to get the information he needed for trial with the late disclosure. But he still doesn't know if he's got all the information or not. Well, I mean, he did. And, of course, that's all speculation, conjecture. That's right. It's not based on this record. That's exactly right. But the other thing I want to point out is he says it's not a 219 sanction, but made an extensive argument about Rule 213 here and the controlled witness and everything else. And this does fall within. And the judge calls it a sanction. He doesn't cite Rule 219. I certainly can see that. But he does call it a sanction. And he does do it in the context of a discovery court. He contends it was a discovery violation. You know, I didn't want to suggest to the court, you know, the whole sequence that Mr. Melton laid out in terms of what happened with him hiring this expert first or whatever, I wasn't specific about that. I don't know what the arrangement is. All I know is that at page R-202 of our record, there is a stipulation indicating that he was at some point a plaintiff's expert and by stipulation was allowed to be our expert. Whether it was a consulting expert or what type of expert, I don't know. You're not doubting his recitation of what happened? No, no, I'm not. I'm just saying at some point he knew who this man was and had hired him. Whether it was consulting or whatever, I don't know. We do have these distinct differences in Illinois about how the experts fit into the categories, don't we? Yes, that's true. And if he says it's consulting, consulting is fine. But he obviously knew who this man was. My only point about that fact is that he knew this expert. He obviously knew him well enough to hire him as a consulting expert, if that's the point. So to say that he was unduly surprised and prejudiced by the Tardy production when you can't say what the production would have revealed, whether it would have revealed any admissible evidence whatsoever, and that he couldn't track anything down for six months, even though he could find plenty of stuff within three to six days to cross-examine him, I'm troubled by that inconsistency. It's not uncommon in this day and age for lawyers to get quick in trying to hire people as consultants and controlling and all kinds of experts. That's true. The bench isn't always long in some of these cases as far as who to get. That is true. No question about it. The emphasis here on firing Dr. Holmes on remand is a little bit of I want my cake and eat it, too. He wants the witness barred on remand, I think, because there isn't anything new. To me, that's the most telling aspect of this whole sort of cross-appeal issue, is that the only way he feels the trial becomes fair is if the witness is eliminated, not because he has some evidence with which to cross-examine that witness that would make a difference in the witness's testimony. But we don't know that. I mean, that's speculation and conjecture. I agree with you, but, I mean, to me, that's the whole point of our appeal, is that it is entirely speculative and entirely conjectural to say that the outcome of this trial would have been any different if that list had been produced sooner. You just can't identify anything. I mean, you asked him the question, Judge Curry asked him the question, what do you got? What would you have used? What did you find? And I don't think the fact that he suffered an adverse verdict relieves him of the obligation on the post-trial motion to make his record and to make a showing of that. There is something, though, to the how much money do you spend after the trial in tracking down things that weren't disclosed before. To me, there's no out-of-pocket expense to conduct that investigation. I mean, you're not hiring experts to do that. I mean, where expense comes in is the cost of depositions, cost of hiring experts, but to go out. What you offer up for the public is your time. Well, that's true, you do. No question about that. But I think at this point, you know, the investment, if I had, you know, as he said, $100,000 invested in the case, I think I would spend a little additional time to see, you know, there's a list of 18 cases, that's what was produced on that list, 18 cases in which the doctor testified. If he didn't have time during the trial and pre-trial and the three days before the trial and the days before the doctor testified to track those things down, then certainly I don't think it would have taken a great deal of time to look at the ones that he could and see, make your record. I don't think that's an unreasonable burden or precedent for this court to impose on a lawyer. So we never saw through, what is it, about 15 cases? Well, he never indicated how many of them on the list that he already had. We know that he asked questions on cross about quite a few different cases. How many of those were on the list? How many were those he found on his own? Unclear from the record. I thought there were just a few that were on the list. There's a total of 18 on that list. Yeah, but I mean, I thought there were only a few he asked questions about at the trial. Yes, as far as I know, that's true. That's correct. Thank you, Mr. Vincent, and thank you both for your argument today. We will take this matter under advisement to get back to you with a written disposition within a short day. And we will now adjourn until…